RYAN v. CAVANAGH et al.

(District Court, S. D. Iowa, C. D.   September 1, 1916.)

1. PARTNERSHIP ⊝⟶183(5)—USE OF FIRM PROPERTY—PAYMENT OF INDIVIDUAL DEBTS.

The rule of administration of the property of a partnership in the courts that partnership creditors have a right to the application of the firm assets first to the payment of the firm debts does not supersede the rule of operation of partnership affairs that the partners can, with the consent of all of them, dispose of the firm property, transfer it into individual property, or apply it to the payment of individual debts, even if the firm is insolvent, until the property is in the custody of the court, so that the use of partnership property with the consent of all the partners to pay individual debts is not a fraud in law, nor can the partnership creditors complain thereof.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 330, 331, 333, 334; Dec. Dig. ⊝⟶183(5).]

2. BANKRUPTCY ⊝⟶149—PARTNERSHIP ⊝⟶179—TRUSTEES—RIGHT ACQUIRED—PARTNERSHIP PROPERTY.

Where one partner uses firm property to pay his individual debts without the consent of his partner, the latter can recover the property and his right to do so is one which passes to the firm's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 229; Dec. Dig. ⊝⟶149; Partnership, Cent. Dig. §§ 310, 314; Dec. Dig. ⊝⟶179.]

3. PARTNERSHIP ⊝⟶54—EVIDENCE—SUFFICIENCY.

In a suit by the trustee of a bankrupt bank to recover assets of the bank applied to the payment of a debt of the cashier, evidence held to show that the bank was conducted by a partnership composed of the cashier and his brother.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 77, 79; Dec. Dig. ⊝⟶54.]

4. PARTNERSHIP ⊝⟶27, 52—CONTRACT—IMPLIED CONTRACT.

Partnership relations are founded in contract, but the contract may be implied as well as express, and may be established by circumstantial evidence as well as by direct evidence.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 29, 75, 77, 79; Dec. Dig. ⊝⟶27, 52.]

⊝⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

5. BANKRUPTCY ⬤⟶303(1)—ACTIONS BY TRUSTEE—BURDEN OF PROOF.

In an action by a trustee in bankruptcy to recover firm assets applied to the payment of the debt of a partner, the burden is on defendants to prove that the payment was made with the consent of the other partner.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458, 459; Dec. Dig. ⬤⟶303(1).]

6. PARTNERSHIP ⬤⟶217(3)—FIRM ASSETS—APPLICATION—INDIVIDUAL DEBTS—CONSENT—EVIDENCE.

Proof that one member of a banking partnership had permitted another to manage the bank, to become deeply indebted to it, and to dispose of the bank's assets, without proof that the former knew of any previous sale of the bank's notes for other than bank purposes, or that he had knowledge of the application of the notes in controversy to the payment of an individual debt, does not show consent to such application.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 323, 330; Dec. Dig. ⬤⟶217(3).]

7. BANKRUPTCY ⬤⟶149—RIGHTS OF TRUSTEE—PARTNERSHIP PROPERTY—APPLICATION TO INDIVIDUAL DEBTS.

A trustee in bankruptcy, suing in the right of one partner to recover firm assets from one to whom they had been transferred in payment of the individual debt of another partner, is not limited to a recovery of the amount received by the partner, though the latter had authority to sell the notes for firm purposes and the transaction was in form a sale, but can recover the notes still uncollected and the amount collected on the others, since equity will not consider the form, but will look to the substance.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 229; Dec. Dig. ⬤⟶149.]

At Law. Action by Charles O. Ryan, as trustee in bankruptcy, against John A. Cavanagh, individually and as trustee, and others. On final hearing. Decree ordered for plaintiff.

Kelleher & Price, of Ft. Dodge, Iowa, for complainant.

E. J. Kelly, of Des Moines, Iowa, for respondents.

WADE, District Judge. This action is brought by the plaintiff, trustee in bankruptcy of the Farmers' Bank of Radcliff, Iowa, and John E. Himmel, and Henry D. Himmel, alleged to be partners conducting said bank, having been adjudged bankrupt, and the plaintiff is the trustee in said bankruptcy proceedings. He brings this action to recover certain promissory notes, or the proceeds thereof, which were the property of the Farmers' Bank of Radcliff, and which were transferred by John E. Himmel to the German Savings Bank of Des Moines, Iowa, some time prior to the bankruptcy.

It is claimed by the plaintiff that said notes were transferred by said John E. Himmel, one of the partners, without authority of the partnership or his copartner, in payment of a private debt of the said John E. Himmel. Insolvency of the partnership and partners is also alleged.

[1] There cannot be much dispute about the law in this case. It is clearly and emphatically expressed by Judge Sanborn in Sargent v.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Blake, 160 Fed. 57, 87 C. C. A. 213, 17 L. R. A. (N. S.) 1040, 15 Ann. Cas. 58, from which I quote:

"There are two rules of law which at different times apply to the management and disposition of the property of a partnership: First, partners own, and, with the consent of each, have the right and power to sell and dispose of the partnership property, to transform it into the individual property of one or more of the partners, to apply it or its proceeds to the payment of their individual debts in preference to those of the partnership, and to make such other honest disposition of it as they deem fit; second, in the administration of the property of a partnership in the courts, the creditors of the partnership have the right to the application of the partnership property to the payment of the partnership debts in preference to the individual debts of the respective partners. The first is a rule of operation, the second a rule of administration. The first governs during the operation of the partnership business and the disposition of the partnership property by the partners, the second operates during the administration of the partnership property after it is brought into the custody of a court. The first rule prevails until by some suit or act the interposition of some court is invoked to administer the partnership property, and until that time the second rule is ineffective. Before the partnership property is placed in custodia legis for administration, it is not held in trust for the payment of the partnership creditors in preference to the creditors of the individual partners. The partnership creditors have no lien upon it, and no independent right to its application to the payment of their claims in preference to the claims of the creditors of the individual partners. Each partner, however, has the right to require the partnership property to be applied to the payment of the partnership debts in preference to the debts of the individual partners, to the end that he may not be required to pay the former out of his individual estate. The right of the creditors of the partnership to payment out of the partnership property in preference to the individual creditors is the mere right by subrogation or derivation to enforce this right of one of the partners after the partnership property has been placed in the custody of the law. Until it has been so placed, each partner has plenary power at any time to release or waive this right, and if each partner has done so and at the time the property comes within the jurisdiction of a court no partner has this right, then no creditor of the partnership has it, for a stream cannot rise higher than its source."

After citing authorities holding that partners may not, even with the consent of all the partners, lawfully appropriate partnership property to their individual debts, when they and their partnership are insolvent, Judge Sanborn says:

"The decisions in these and many other cases have been carefully considered, but because insolvency does not deprive persons of their right to dispose of their property for lawful purposes, because the application of partnership property with the consent of all the partners to the payment of the individual debts of the partners in preference to those of the partnership is a lawful purpose so long as no application for the interposition of a court to administer the property is made, and the creditors paid have no reasonable cause to believe that a preference is intended, because until the partnership property is placed in custodia legis the rule of administration does not take effect and the preferential equities of the partnership creditors do not attach to it either by way of trust or lien, and because the Supreme Court, by whose determination this court must be guided, and the weight of modern authority have so determined, we are constrained to hold, and do decide that, when all the partners consent, their application of the partnership property to the payment of an individual debt of a partner within four months of the filing of a petition in bankruptcy, while the partners and the partnership are insolvent, does not evidence any intent on the part of the debtors to hinder, delay, or defraud the creditors of the partnership within the meaning of section 67e of

the bankruptcy law, and it is not void or voidable where the creditor paid has no reasonable cause to believe that a preference was intended by the payment."

Supporting these statements numerous authorities are presented. These principles were reaffirmed by the same court in Crawford v. Sternberg, 220 Fed. 73, 135 C. C. A. 641, and cited with approval in Re Baker & Edwards (D. C.) 224 Fed. 611. It is approved and distinguished in Amundson v. Folsom, 219 Fed. 122, 135 C. C. A. 24.

So we must proceed upon the settled doctrine that the use of .partnership property to pay individual debts when the partnership consents does not in law constitute fraud; nor can partnership creditors complain thereof.

[2] We must also proceed upon the settled doctrine that, where partnership assets are used by one partner to pay his individual debt without the consent of his copartners, the nonconsenting partner has the right to recover the property, and in case of bankruptcy, the trustee has the same right. A trustee in bankruptcy becomes vested with all the property rights of the bankrupt, and he is empowered to recover any property which the bankrupt could recover in order that it may be applied to the payment of his debts.

Under the evidence in this case, there is no proof that the transaction between John E. Himmel and John A. Cavanagh was with actual intent to defraud creditors; the intent of John E. Himmel was to meet the embarrassing position in which he was placed by having transferred to the German Savings Bank certain forged paper. The intent and purpose of John A. Cavanagh was to secure payment of the debt or collateral in place of the forged paper, and while the evidence shows that his efforts were vigorous and positive, they must be considered in connection with the provocation which he had.

There is no question but that the notes transferred by John E. Himmel were partnership property if a partnership existed; they were payable to John E. Himmel as cashier, so that Cavanagh and the German Savings Bank had full knowledge of their ownership by the bank. But I must assume that Cavanagh believed that a transfer of the notes under the circumstances would be valid in law; otherwise he would not have accepted them.

In view of the foregoing, this case must turn upon the determination of two questions of fact: First, was the bank conducted by a partnership; and, second, if so, did Henry D. Himmel consent to the transfer of these notes, which belonged to the bank, to pay or settle the private debt of John E. Himmel?

[3, 4] As to the first, there is no question in my mind but that a partnership existed. Partnership relations are founded in contract, but contracts may be implied as well as expressed, and may be established by circumstantial evidence as well as by direct evidence. No one can follow the history of this bank and not be convinced that as between the brothers, Henry and John, there was a recognition of the fact that they were both interested in the bank, and in its profits, and in its losses. There is not a word of evidence which indicates that the bank was an individual affair. John and Henry had represented

themselves for years as officials of the bank, John as cashier, Henry as vice-president, and later, president. By their letter heads upon which these titles were carried, there was a declaration to the world by both parties; that they were officers of a joint enterprise. The use of these letter heads so inscribed constituted a solemn declaration by both parties that it was a joint enterprise. Placing upon their acts and conduct the construction which would occur to the ordinary mind, the bank was represented to be either a corporation or a partnership, and it was not a corporation. The specific relations of this joint enterprise may not have been determined, but if the bank had succeeded and made large profits, would any one contend that John E. Himmel could appropriate all these profits, and that any court would sustain the transaction? And in the hour of failure, is there any one that would contend that Henry D. Himmel could avoid liability under all the facts, for the debts of the bank? There are cases in which individuals are held to be partners so far as creditors are concerned, but not partners inter se; but this is not such a case. It must, of course, be conceded that Henry D. Himmel was either a partner or an employé. He had devoted much time to the business of the bank; had transacted some of its important business; had kept some of its important records; but there is not a word of evidence to indicate that he was a mere employé. These facts, together with the sworn testimony of both parties, leave no doubt as to the fact that a partnership existed.

[5] It is earnestly contended that, even if a partnership existed, the evidence established the fact that Henry D. Himmel consented to the transfer of the notes in controversy to settle the private debt of John E. Himmel. I cannot agree that there is proof of his consent. The burden of proof is upon the defendants, and the fact of consent must be established by a preponderance of the evidence; but there is practically no evidence. There is evidence, of course, that Henry had permitted John E. Himmel to manage the bank in his own way, and that he had knowledge of the sale of notes by John; but there is no evidence that I recall showing that, at any previous time, notes belonging to the bank had ever been transferred for any except bank uses; nor is there evidence which establishes that at any time John E. Himmel used the assets of the bank directly to pay his debts. It is true that he used the money of the bank, but it was charged up upon the books as an overdraft.

[6] It is true that Henry permitted the business of the bank to be run in a most reckless way, and permitted John E. Himmel to become deeply involved in debt to the bank, but consent to a transaction of the kind in suit cannot be established by such evidence. There is no element of estoppel based upon a long course of conduct between the parties, nor is it claimed that Cavanagh, or the German Savings Bank, proceeded upon the assumption that John had power to use the notes of the bank for his own individual purposes, based upon any previous transactions, of which Cavanagh or the bank had knowledge.

To establish the consent of a copartner to the use of firm property for individual purposes, it should appear that the copartner had

knowledge of the specific transaction. He may have consented to previous use of bank assets for individual purposes, but except as in certain cases estoppel might arise, which is not present in this case, there should be actual consent to the particular transaction. A partner might consent to the use of a certain amount by his copartner for a specific private purpose. This consent might depend, to a considerable extent, upon the condition of the affairs of the partnership and its ability to take care of its customers and its creditors, and the partner certainly should have the opportunity of considering the amount of the assets to be taken—the purpose to which they were to be applied, and the condition of the partnership business at the time with reference to the payment of partnership liabilities.

This question is not only important in this case, but it is important in all partnership transactions. Opinions of courts are not only for the benefit of counsel, but are intended as a guide to business men in the transaction of their business affairs, and it would be a dangerous doctrine to hold that one partner, without the consent of his copartner, could divert the assets of the firm to the payment of his individual creditors, without at least conferring with his copartners upon the subject; and it would be a dangerous doctrine to permit the transaction to be sustained, simply because, during a long course of dealings, the nonconsenting partner had shown his confidence in his copartner by permitting him to have full charge of the business.

A large part of the business of the world is transacted by partnerships, and men would hesitate to enter a partnership if a copartner could legally deprive the partnership of its assets for private use, without consulting those jointly interested with him in the ownership of the property.

It follows from the foregoing, that the plaintiff is entitled to follow and recover the partnership property, wrongfully diverted.

[7] Counsel contend that there was in fact a sale of these notes, and that John E. Himmel had power to sell the notes, and that the defendants cannot be held liable beyond the amount for which he agreed to sell them. It is true that there was a sale in form, but courts of equity do not consider forms; they consider substance. They do not consider the question as to how the thing was done, but they consider what was done, and the motive and the intent of the parties in doing it. As Judge Hook said in Amundson v. Folsom, supra: "It is too narrow a view to regard each step in the transaction separately and independently." He further says: "It is not always safe to venture a prohibited course on a mosaic of sound, but unrelated, rules of law." What was actually done by John E. Himmel, was to take these notes, and through the transaction with the German Savings Bank, pay his personal debt. Counsel say he had authority to sell the notes of the bank. This is too broad a statement. He had only authority to sell the notes of the bank, for the bank, and in the transaction of the business of the bank.

I cannot concede that, if John E. Himmel took $10,000 worth of notes out of the bank, and sold them to a party who knew that the

sale was for private purposes for $5,000, and retained the money, the other partner would be compelled to resort to an action against him to recover the $5,000. He would have a right to recover the notes, because the whole transaction was without authority. An employé of a bank may have power to sell the notes of the bank, but it would not be contended that if he sold them for his own private use, and the purchaser knew that he was selling them for his own private use, that the bank would be limited to an action against him to recover the money.

"It is too narrow a view to regard each step in the transaction" with the German Savings Bank. The bank by these different steps acquired the notes which were the assets of the bank, which John E. Himmel had no power to deliver to them under the circumstances. These assets in equity still belong to the partnership and to the trustee in bankruptcy now representing the partnership. In so far as they have been collected, the proceeds thereof belong to the trustee.

Now, I am not sure that I have a clear idea of the exact amount which the plaintiff is still entitled to recover. He is entitled to receive the notes still uncollected, and the proceeds of those collected, and I have no doubt that counsel can agree in preparing the decree, upon this amount.

Now, as to the parties liable, under my view of this case, John A. Cavanagh is not personally liable, but he is liable as trustee of the German Savings Bank, to a decree directing him, as such trustee, to turn over any part of the assets that may be in his hands.

I do not remember whether the German Savings Bank has been fully dissolved and out of business; if not, it is liable to the extent of any assets held by it, though, as I understand the record, it has no assets—all its assets having passed either to the Des Moines National Bank, or to John A. Cavanagh, trustee. If any of these assets passed to the Des Moines National Bank, it is liable to the extent of the assets so received, and in this connection it cannot make any difference that the money was applied upon the indebtedness of the Enamel Company; nor do I consider the Enamel Company directly liable to the plaintiff herein. It is a proper party in order that it may be bound by this adjudication, and in order that the debts which they owed to the bank, which were canceled by the application of the proceeds of the notes, may be reinstated, and the court will hold jurisdiction in order to complete all the equities of all the parties herein.

I apprehend there will be no difficulty in the preparation of a decree which will insure a return of these assets, if the conclusions of the court are correct, and to this end the matter of preparation of the decree is submitted to counsel, in the hope that a form may be agreed upon which will protect the rights of all parties. If not, I will hear the parties further upon the terms of the decree.

Any decree entered will reserve proper exceptions.