In re Jean Mary O'CONNELL, Debtor.

Charles W. GRANT, Trustee, Plaintiff,

v.

Angelo P. PODES and Mary Podes, Defendants.

Bankruptcy No. 88–178–BKC–3P7. Adv. No. 88–267.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Sept. 19, 1990.

**312**

Timothy W. Volpe, Jacksonville, Fla., for plaintiff.

T. Geoffrey Heekin, Jacksonville, Fla., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding seeking to avoid a transfer as a preference came before the Court for trial on July 5, 1990, and upon the evidence presented, the Court en-ters the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Debtor, Jean Mary O'Connell, and her husband, Phillip A. O'Connell, (collectively, the "O'Connells") met the defendants in 1978. They have remained good friends for many years.

2. Between 1982 and 1986, the defendant made numerous loans to the O'Connells in excess of $400,000. These loans were made on an informal basis for large sums without written promissory notes or maturity dates and with repayment required only when the O'Connells were financially able to pay.[1]

3. Between 1980 and January 25, 1988, the O'Connells were equal partners with Joseph Brown and Helen Brown (collectively, the "Browns") in a general partnership known as "Powers Easy Store It" (the "Partnership").

4. The Partnership's main asset was real property located at 6653 Powers Avenue, Jacksonville, Florida, (the "Partnership Property") and the sole business was the operation of mini-warehouses on the Partnership Property.

5. On October 31, 1983, the O'Connells and the Browns entered into an agreement (the "1983 Agreement") which precluded the O'Connells from selling, assigning, granting a lien upon or a security interest in their interest in the Partnership or the Partnership Property without the written consents of the Browns.

6. On January 27, 1984, the O'Connells and Browns executed and recorded in the official records of Duval County, Florida, a "Notice of Agreement."

> [N]either party shall sell, assign, grant a lien upon, a security interest in or otherwise dispose of all or any portion of his interests in the Partnership or the Partnership's property without the prior written consent of all parties thereto.

7. On October 17, 1986, the O'Connells gave to Mr. Podes a promissory note for

---

**1.** Neither the debtor or Mr. Podes can locate supporting documentation for many of the loans.

$408,000 consolidating all previous indebtedness. The O'Connells never made any payments for this note.

8. Sometime in 1984 or 1985, defendants' attorney, while conducting a title search, found the "Notice of Agreement."

9. On January 1, 1987, the O'Connells delivered to the defendants a renewal promissory note (the "Renewal Note") in the amount of $408,000. The Renewal Note was prepared by the attorney for the defendants. Pursuant to the Renewal Note, the O'Connells, in violation of the 1983 Agreement, agreed to assign their interest in the Partnership and Partnership Property to the defendants in the event of a default under the note. On January 29, 1987, the defendants filed a UCC–1 financing statement for this assignment.[2]

10. The Browns did not have knowledge of and did not consent to the O'Connells' agreement to assign to the defendants their interest in the Partnership and Partnership Property.

11. On January 25, 1988, the defendants and the O'Connells, in violation of the 1983 Agreement, entered into a purchase agreement by which the defendants purchased the O'Connells' interest in the Partnership and the Partnership Property. In consideration for the transfer, the defendants agreed to (i) cancel the Renewal Note and (ii) pay the O'Connells $65,000. This sum was never paid. On that same day, the O'Connells delivered to the defendants a warranty deed and assignment by which they claim an interest in the Partnership and the Partnership Property.

12. On January 28, 1988, or three days after this transfer, the debtor filed a Chapter 7 petition (the "Petition Date").

### Conclusions of Law

A. The O'Connells' transfer to the defendants of their interest in the Partnership and the Partnership Property is a preference.

■ Under § 547(b) of the Bankruptcy Code, a trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

■ Applying this Code provision to the facts, the O'Connells' transfer of their interest in the Partnership and the Partnership Property to the defendants is a preference for the following reasons:

1. The transfer was a "transfer of an interest of the debtor in property" because, absent the transfer, the O'Connells' interest in the Partnership Property would have been property of the debtor's estate. The property was held by the O'Connells in a tenancy by the entireties and though only Mrs. O'Connell filed a bankruptcy petition, there are joint creditors of both Mr. and Mrs. O'Connell who have filed claims in Mrs. O'Connells' bankruptcy. *See In re Ciccarello,* 76 B.R. 848 (Bankr.M.D.Fla. 1987) (property held as tenancy by the entireties is recoverable by joint creditors and subject to administration in bankruptcy notwithstanding filing by only one spouse); *Matter of Snow,* 38 B.R. 19 (Bankr.M.D. Fla.1983) (to the same effect).

2. The transfer was made to a creditor because it is undisputed that the defen-

---

**2.** The O'Connells did not deliver a mortgage to the defendants on the Partnership Property to secure payment of the amounts due under the Renewal Note.

dants were prepetition creditors of the debtor and spouse.

3. The transfer was made in payment of an antecedent debt since it is conceded that the transfer of January 25, 1988, was in payment of the debt described in the Renewal Note which was made prior to 1987.

4. The transfer was made while the debtor was insolvent. Under § 547(f), a debtor is presumed to be insolvent on or during 90 days immediately preceding the petition date. The defendants presented no evidence to overcome this presumption. Furthermore, the debtor's statement of affairs and schedules show her total debts far exceeded the total value of her property on the date of the transfer. *See* 11 U.S.C. § 101(31) (1978).

5. The transfer was made within 90 days of the Petition Date, occurring on January 25, 1988, or three days before the filing on January 28, 1988.

6. The transfer enabled the defendants to receive more than they would have received in the debtor's Chapter 7 case. As a result of the transfer, the defendants received property worth $450,000.[3] The maximum amount available in the debtor's estate for distribution without recovery of the property to the unsecured creditors is $6,794.53.

1. *The defendants did not have a valid security interest in the Partnership or the Partnership Property.*

 The defendants contend that the transfer is not a preference arguing that the Renewal Note and UCC–1 filing statement recorded on January 29, 1987, grants them a secured lien on the O'Connells' interest in the Partnership and the Partnership Property.

The O'Connells could not grant a security interest in either the Partnership or the Partnership Property. Under the 1983 Agreement, the O'Connells agreed not to "sell, assign, grant a lien upon or a securi-

ty interest in" the Partnership or the Partnership Property. Further, pursuant to § 620.68(2)(b), Florida Statutes, no partner may assign specific partnership property for his or her own individual debts. Finally, the only valid way to perfect a security interest in real property is to record a mortgage which was not done in this case.

a. The granting of a security interest was precluded by written agreement between the partners and such nonassignability provisions are valid under Florida law.

Under Florida law, a partner may not transfer his "interest in the partnership" without the consent of the remaining partners if such transfer is prohibited by an agreement between the partners. *Rafkind v. Simon*, 402 So.2d 22 (Fla. 3d DCA 1981). In *Rafkind*, the partners entered into a written agreement which precluded each partner from assigning his interest in the partnership without the consent of the remaining partners. A partner subsequently assigned his interest in violation of the agreement. The court held that the assignment was unenforceable. *Id.* at 23–24.

In this case, the O'Connells and the Browns not only agreed in selling, assigning, granting a lien upon or a security interest in the Partnership or Partnership Property without prior written consent, but also signed a Notice of Agreement and recorded it in the official records of Duval County. The Browns did not consent to the O'Connells making any assignment of their Partnership Interest or the Partnership Property. They also objected to the transfer of O'Connells' interest to the defendants.

Under Florida law, there are three prerequisites to the existence of a security interest: (i) an agreement, (ii) the giving of value and (iii) the debtor must have rights in the collateral. *Fla.Stat.* § 679.203(1) (1989). The O'Connells had contracted away any right to grant a security interest

---

**3.** Pursuant to the Purchase Agreement, the defendants agreed to pay the O'Connells $450,000 for their interest in the Partnership and the Partnership Property. Furthermore, on July 13, 1988, the defendants purchased the Browns' in-

terest in the Partnership and the Partnership Property for $450,000. Thus it is reasonable to conclude the O'Connells' equity in the Partnership and the Partnership Property totaled at least $450,000.

in the Partnership or the Partnership Property without prior consent from the Browns. No consent was given by the Browns, and the defendants' security interest is void. Under settled Florida law such prohibitions on assignment are valid and enforceable. *Rafkind, supra; Cordis Corp. v. Sonics Int'l, Inc.*, 427 So.2d 782, 783 (Fla. 3d DCA 1983).

**b. The alleged security interest in the Partnership Property was void under Fla.Stat. § 620.68(2)(b).**

A partner in a general partnership has three distinct property rights: (i) rights in specific partnership property; (ii) interest in the partnership; and (iii) right to participate in the management. *Fla.Stat.* § 620.675. A partner's "interest in the partnership" is his share of the profits and surplus. *Fla.Stat.* § 620.685. "Specific partnership property" is all property which was originally brought into the partnership or subsequently acquired by the partnership. *Fla.Stat.* § 620.595. A partner is co-owner with his partners of "specific partnership property" holding as a tenant in partnership. *Fla.Stat.* § 620.68(1).

A partner's rights in "specific partnership property" are not assignable without the consent of the remaining partners. *Fla.Stat.* § 620.68(2)(b); *See also, In re Canto*, 84 B.R. 773, 776 (Bankr.N.D.Fla. 1988); *Angle v. Angle*, 506 So.2d 16, 17 (Fla.App. 2d DCA 1987). Accordingly, the transfer by a debtor of his interest in "specific partnership property" to pay his individual debts is "void" and the property is recoverable by the trustee. *See Freidco of Wilmington, etc. v. Farmer's Bank, etc.*, 16 B.R. 835, 840–42 (D.Del.1981); *In re Decker*, 295 F.Supp. 501, 508–11 (W.D.Va. C.D.1969); *Ryan v. Cavanagh*, 238 F. 604, 607–09 (S.D.Iowa C.D.1916).[4]

We will now apply this law to the instant case. Even if the security interest was not void under Florida law and the 1983 Agreement, any security interest in the Partnership Property is void. The Partnership Property was "specific partnership proper-

ty" in which the O'Connells had no right to grant any security interest pursuant to § 620.68(2)(b) without all partners consenting. Because the O'Connells had no rights to grant a security interest in the Partnership Property, the security interest of the defendants in the Partnership Property is void under Florida law.

**c. The security interest in the Partnership Property is void in that it is not a valid mortgage.**

■ To grant a security interest in real property, the owner must deliver a mortgage to the transferee. *See Fla.Stat.* § 697.01 (1989). The defendants' security interest in the Partnership Property is invalid because the O'Connells did not deliver a mortgage to the defendants.

■ The UCC–1 financing statement filed by the defendants is not a mortgage because it is not an instrument conveying property for the purpose of securing payment of debt. Specifically, the financing statement (i) does not describe the debt that the property is securing, (ii) states no maturity date or interest rate and (iii) does not describe the obligations of the parties. *Id.* The Renewal Note is likewise not a mortgage and fails to demonstrate the requisite intent to create a mortgage. *Id.*

2. *Even if the defendants' security interest was valid, it is still a preference because (i) it was made within one year of the Petition Date and (ii) the defendants are "Insiders."*

The granting of a security interest is void as a preferential transfer made prior to the 90–day "reachback" period under § 547(b)(4)(B) if it was made (i) within one year of the Petition Date and (ii) was granted to an "insider."

Under § 547(e)(2), a transfer of a security interest occurs on the date of perfection if perfection occurred 10 days after the actual transfer. In this case, the transfer of the alleged security interest occurred on January 1, 1987. The security interest was

---

**4.** The purpose of *Fla.Stat.* § 620.68(2)(b) is to protect a partner from having a new partner "thrust upon him … without his … consent."

*See, Official Comment to the Uniform Partnership Act*, § 25(2)(b); *Ryan v. Cavanagh*, 238 F. at 609.

perfected 28 days later on January 29, 1987. Accordingly, under § 547(e)(2), the transfer occurred on January 29, 1987, which is within one year of the Petition Date of January 28, 1988.

Section 101(30) defines an insider as follows:

(30) "Insider" includes—

(A) If the debtor is an individual—

(i) relative of the debtor or of a general partner of the debtor

(ii) partnership in which the debtor is a general partner;

(iii) general partner of the debtor; or

(iv) corporation of which the debtor is a director, officer, or person in control. . . .

The legislative history states:

An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 312 (1977), *U.S.Code Cong. & Admin. News*, pp. 5787, 6269 (1978).

The Bankruptcy Code rule of construction set forth in § 102(3) provides that the term "includes" which is used in defining "insider" under § 101(30) is not limiting. Accordingly, an "insider" may be a person other than those enumerated in § 101(30). *See, Matter of Kucharek*, 79 B.R. 393, 395 (Bankr.E.D.Wis.1987); *Matter of Montanino*, 15 B.R. 307, 310 (Bankr.D.N.J.1981).

The true test of an "insider" is one who has such a relationship with the debtor that their dealing with one another cannot be characterized as an arms-length transaction.

*Matter of Montanino*, 15 B.R. at 310.

■ The defendants are "insiders." Mr. Podes testified that the O'Connells and the defendants were "very good friends." The debtor testified that she and her husband were personal friends with the defendants. Furthermore, the defendants were not deal-

ing at "arms-length" with the O'Connells. Between 1982 and 1986, the defendants made numerous loans to the O'Connells totaling over $400,000. These loans were made on an informal basis. Often there was no promissory note, or maturity date and repayments required only when the O'Connells were financially able. The debtor and Mr. Podes cannot locate any supporting documentation for many of the loans. Mr. Podes only loaned money "with a handshake" to two other individuals and in neither case did the amount loaned approach the large sums loaned to the O'Connells. All other elements of a preference are present with regard to the security interest.[5]

Therefore, the security interest is a preference.

B. The O'Connells' transfer of their interest in the Partnership and the Partnership Property is void under § 544(b) of the Code.

Under § 544(b), the trustee may void any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

The O'Connells' transfer of their interest in the Partnership and the Partnership Property to the defendants is void under § 544(b) because the transfer is voidable under Florida law. Specifically, (i) the transfer of any interest in the Partnership or the Partnership Property was prohibited by the 1983 Agreement and (ii) transfer of any interest in the specific Partnership Property was void under *Fla.Stat.* § 620.68(2)(b). *See supra.* Moreover, the warranty deed and assignment by which the O'Connells transferred their interest in the Partnership and the Partnership Property to the defendants was void.

■ Under Florida law, a conveyance of an interest in real property must be made by a written instrument that is signed by

---

**5.** Specifically, the transfer of the security interest was in payment of an antecedent debt because the security interest was granted on January 1, 1987, to secure payment of a debt which

occurred prior to October 17, 1986. Furthermore, the debtor was insolvent at the time of the transfer because her total debts exceeded the total value of her property. .

the grantor in the presence of two subscribing witnesses. *Fla.Stat.* § 689.01 (1989). When two subscribing witnesses are not present at the execution of the deed, it is void. *Santos v. Bogh*, 334 So.2d 833 (Fla.App. 3d DCA 1976), *cert. denied*, 341 So.2d 293 (Fla.1976). In this case, the warranty deed and assignment transferring the O'Connells' interest in the Partnership and the Partnership Property is void because one of the witnesses listed on the deed, Olita M. Cerni, was not present at the time the O'Connells signed the instrument.

C. The trustee is entitled to recover the O'Connells' interest in the Partnership and the Partnership Property.

When a transfer is avoided under §§ 544 or 547, the trustee may recover from the initial transferee, for the benefit of the estate, the property transferred. 11 U.S.C. § 550(a) (1978). In this case, the trustee is entitled to recover the O'Connells' interest in the Partnership and the Partnership Property because (i) the transfer is void under §§ 544 and 547 and (ii) the defendants were the "initial transferees" of the property.

■ Under § 550(d)(1)(A) (1978), a "good faith transferee" is entitled to a lien on the property recovered to secure the cost to the transferee of any improvement made after the transfer, less the amount of any profit realized by the transferee from the property. A person is not a "good faith transferee" if he has knowledge of the transferor's unfavorable financial condition at the time of the transfer. *See, In re Greenbrook Carpet Company, Inc.*, 22 B.R. 86, 91 (Bankr.N.D.Ga.1982).

■ The defendants are not "good faith transferees" because they had knowledge of the O'Connells' poor financial condition at the time of the transfer. In addition, the defendants had knowledge of the 1983 Agreement prohibiting the assignment of

the O'Connells' interest in the Partnership Property and still consummated the transfer.[6]

A final judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

---

6. Even if the defendants were "good faith transferees," they are still not entitled to a lien on the Partnership Property because the cost of the defendants' improvements, if any, did not exceed the profit received by the defendants from the Partnership Property. The defendants re-

ceived profits from the Partnership Property in the amount of $240,000 for 1988 and approximately $225,000 for 1989. The defendants offered no evidence that the cost of their improvements, if any, exceeded the profits earned.