## In re LLEWELLYN.

### No. 6870.

District Court, M. D. Pennsylvania.
July 22, 1936.

Charles C. Lark, of Shamokin, Pa., for petitioner.

Knight & Kivko, of Sunbury, Pa., for trustee.

JOHNSON, District Judge.

This is a petition to review an order of the referee in bankruptcy declaring void as preferences certain transfers made by the bankrupt to the National Bank of Shamokin.

On or about August 5, 1929, the Central Theatres, Inc., obtained a $20,000 loan from the National Bank of Shamokin and gave a note for that amount, indorsed by Llewellyn, the bankrupt, Chamberlain, Higgins, and others. The note was later reduced to $19,700. It became overdue on or about February 6, 1930, when it was protested. Higgins paid $9,850, and the other half of the note was paid by Llewellyn and Chamberlain according to arrangement. On July 19, 1930, Llewellyn and Chamberlain gave their note in the amount of $9,850 to the National Bank of Shamokin, and that amount was credited to Llewellyn and Chamberlain in a special account, called a "sundry account." As collateral for the note, Llewellyn transferred to the bank a bond and mortgage on his property, and assignments of other mortgages, totaling $9,850. On the same day Llewellyn and Chamberlain drew a check for $9,850 on the "sundry account," payable to the National Bank of Shamokin, in "payment of one-half of note of the Central Theatres, Inc."

An involuntary petition in bankruptcy was filed against Llewellyn on July 31, 1930, and after answer he was adjudged a bankrupt on August 21, 1931.

The referee in bankruptcy held that the transfer of the mortgage and assignments of mortgages to the bank constituted pref-

erences and were void because made within four months of the filing of the petition in bankruptcy against Llewellyn, while he was insolvent, not for a present consideration, and under such circumstances as to cause the bank to believe the transfers would constitute preferences.

The question here is whether the findings and conclusions of the referee in bankruptcy, that the transfers by the bankrupt were made to secure a pre-existing indebtedness, and that the bank had reasonable cause to believe that it was receiving preferences, are correct and supported by competent evidence.

■ It is well settled that the findings of a referee will not be disturbed unless a clear mistake has been made, or there is no substantial testimony to support the findings. Wald v. Longacre (C.C.A.) 34 F. (2d) 25; In re Institute of Practical Arts (D.C.) 9 F.Supp. 254; Rasmussen v. Gresly (C.C.A.) 77 F.(2d) 252.

Higgins, a director of the National Bank of Shamokin, and at the head of the Central Theatres, Inc., was instrumental in obtaining the loan of $20,000 from the bank for which a note, unsecured by collateral, was given indorsed by Higgins, Chamberlain, Llewellyn, the bankrupt, and others. The note became overdue in February, 1930, and was protested. The Central Theatres, Inc., disbanded. A bill in equity for the appointment of a receiver for the Chamberlain Amusement Enterprises was filed in March 27, 1930, and a receiver was appointed. The testimony of Zartman, Graeber, and Ryon, teller, cashier, director, and attorney, respectively, of the National Bank of Shamokin, was to the effect that they knew a receiver had been appointed for the Chamberlain Amusement Enterprises, Inc., in which the bankrupt was connected and interested; that the fact of the receivership was set forth in the newspapers, about which there was considerable comment. A suit was instituted by the Penn Trust Co. v. Llewellyn, the bankrupt, in May 22, 1930, for $14,500. Graeber, the cashier of the bank, knew that such a suit had been instituted and that it had been reported in the newspapers. The National Bank of Shamokin insisted that the $20,000 note be settled. The bank made demand on the bankrupt personally and by mail, and demanded security. Finally, the arrangement was made whereby Higgins agreed to pay one-half of the $19,700 remaining due on the note of the Central Theatres, Inc., and Chamberlain and the bankrupt agreed to pay the other half. The bankrupt offered as security a certain mortgage on his property and assignments of mortgages having a face value of $9,850. The board of directors of the bank considered the proposition offered, and the minutes of July 3, 1930, show that: "After considerable discussion it was decided that, inasmuch as suit cannot be entered at the moment, the Real Estate Committee in conjunction with the attorney, Wm. W. Ryon, inspect the properties, determine the valuation and report at the next regular meeting when final decision will be given as to the Llewellyn and Chamberlain note and the security offered."

The attorney for the bank, who also was one of its directors, made an examination of the records of Northumberland county and made a report to the bank. He testified that he examined the records of conveyances out of the bankrupt and the mortgage records. The evidence discloses that the records of Northumberland county showed that there was recorded on April 9, 1930, a conveyance from the bankrupt to his sisters of the northern part of lots 1 and 2, block 38, Shamokin, Pa., consideration $1; that there was recorded on April 9, 1930, a conveyance from the bankrupt to his sisters of lots 1, 3 to 10, 19 to 24, 29, and 30 in Grandview, Rockefeller township, and a tract in the upper part of Augusta township, consideration $1; that there was recorded on April 16, 1930, a conveyance from the bankrupt to one Louisa Runkle and from Louisa Runkle to Sarah M. Llewellyn, wife of the bankrupt, of lots 17 and 18 in Grandview, Rockefeller township, consideration $1. Graeber, the cashier, testified that he may have heard that the bankrupt made conveyances to his wife and sisters. The bankrupt testified that after these conveyances were made he had only his home and one other property; that he was financially involved at the time; and was in no better financial condition than when the bankruptcy petition was filed against him.

The transfers in question were made on July 19, 1930, under the above-related circumstances. The bankrupt and Chamberlain executed their note in the amount of $9,850 to the National Bank of Shamokin, and the bankrupt transferred to the bank securities having a face value of $9,850. The bank credited that amount to a special

account, used only for the one transaction. On the same day Chamberlain and the bankrupt drew $9,850 from that special account by check to the bank "in payment of one-half of note of Central Theatres, Inc."

The referee had ample facts on which to reach his conclusions and on which to base his findings that the transfers by the bankrupt were made to secure a pre-existing indebtedness and not for any present or new consideration, and that the bank had reasonable cause to believe that preferences would be effected by such transfers.

As was stated in Re C. J. McDonald & Sons (D.C.) 178 F. 487, 492, "Actual knowledge is not made the criterion of proof in such cases, nor is it necessary that it should appear that the bank actually believed that the mortgagor was insolvent, but the true inquiry is whether Mr. Mullins, as president of the bank, a lawyer, and business man of ordinary prudence, sagacity, and discretion, had reasonable cause to believe that the debtor was insolvent, in view of all the facts and circumstances, and, as it appears that the debtor was in fact insolvent, it seems to me clear that the circumstances were such as would put a person of ordinary prudence and discretion upon inquiry, and that it was his duty to make all such reasonable inquiry, and that there were such means of knowledge as would have enabled him to ascertain the true state of the case. A creditor, under these circumstances, is required to exercise ordinary prudence, and, if they fail to investigate, they are chargeable with all the knowledge which it is reasonable to suppose they would have acquired if they had performed their duty in that regard. Positive proof of collusion between debtor and creditor, by which one may be preferred, is not generally to be expected, and for that reason, among others, the law allows a resort to circumstances as the means of ascertaining the truth, and the rule of evidence is well settled that circumstances inconclusive if separately considered may by their joint operation, especially when corroborated by moral coincidences, be sufficient."

And now, July 22, 1936, the order of the referee in bankruptcy, declaring the transfers void as preferences, is affirmed, and the petition of the National-Dime Bank of Shamokin, to review the referee's order, is dismissed.