In the Matter of William MONTANINO, a/k/a William Montanino, Sr., Debtor.

D. Gayle LOFTIS, as Trustee for William Montanino, a/k/a William Montanino, Sr., Plaintiff,

v.

Dorothy MINAR and John Minar, Defendants.

Adv. No. 80–0535.

United States Bankruptcy Court, D. New Jersey.

April 1, 1981.

D. Gayle Loftis, Nutley, N. J., trustee of the estate of William Montanino, debtor.

Gerald M. Zashin, Mountain Lakes, N. J., for trustee.

Kleinberg, Moroney, Masterson & Schachter by James E. Masterson, Millburn, N. J., for defendants Dorothy and John Minar.

## OPINION

VINCENT COMMISA, Bankruptcy Judge.

The trustee in bankruptcy has filed a complaint against the defendants Dorothy and John Minar, seeking to set aside a transfer to them of real property made by the debtor, William Montanino, also known as William Montanino, Sr.

The first count of the complaint alleges that the conveyance of the real property is voidable under the provisions of § 548 of the Bankruptcy Code as a fraudulent transfer made for less than the reasonable equivalent value of the property at the time the debtor-transferror was insolvent.

The second count, brought pursuant to § 547 of the Bankruptcy Code, alleges that the transfer is void as it is a valuable preference made to an "insider", within one year of the date the petition in bankruptcy was filed, and beyond the ninety day period of such filing, at a time the defendant-creditor has reasonable cause to believe that the debtor was insolvent at the time of the transfer.

On May 19, 1980 the debtor herein, William Montanino, filed a petition for relief under Chapter 7 of the Bankruptcy Code. D. Gayle Loftis, the plaintiff herein, was appointed trustee for the debtor's estate.

In September 1978 the debtor purchased certain real estate in the City of Passaic, New Jersey, identified as Block No. 4103A, Lot 36, and commonly known as # 85 Burgess Place, Passaic, New Jersey. The building on the property was in a run-down condition, and has not been occupied since the time the debtor purchased the property for $6,000.00, which funds came from $7,000.00 loaned to him by the defendants in September 1978. At the time the loan was made, no promissory note or other written evidence of the loan was executed nor were any repayment or interest terms agreed upon.

The defendants are the parents of one Janice Tier, the fiancee of the debtor, who has lived with him for the past five (5) years in a one-family dwelling at 109 Van Winkle Avenue, Clifton, New Jersey. Also living in the same house are one child of the debtor, who is married to another woman, and one child of Janice Tier by a previous marriage. The debtor testified that he has considered marriage to Janice Tier, while she claims she has no interest in any future marriage.

In early December 1979 the debtor told the Minars he would not repay the $7,000.00 loan and was transferring the Burgess Place property to them in repayment of the loan. Thereafter, by deed dated December 7, 1979 and recorded December 11, 1979 in Book W104 of Deeds, on page 111, the debtor conveyed the Burgess Place property to Dorothy and John Minar. The consideration for the transfer allegedly was the $7,000.00 antecedent debt owed the Minars. The deed contained the following recital: "This is a conveyance between relatives."

The debtor testified that he never authorized his then attorney to place that statement in the deed. The deed also recites that the consideration for the transfer was one ($1.00) dollar.

The Burgess Place property has been listed for sale by the Minars, and handling the transaction is their daughter, Janice Tier. The Minars presently reside in California, and did not appear at the trial of this matter.

■ Section 547(b) of the Bankruptcy Code enumerates the five necessary elements of an action to void a transfer made to an "insider". The transfer is made (1) to or for the benefit of a creditor, (2) on account of an antecedent debt owed by the debtor before the transfer was made, (3) the transfer was made between ninety (90) days and one (1) year before the date of the filing of the petition in bankruptcy, (4) was made while the debtor was insolvent and the creditor had reasonable cause to believe that the debtor was insolvent at the time of the transfer, and (5) the transfer enabled the creditor to receive payment of a greater percentage of his claim than he would have under the distributive provisions of Chapter 7 if the transfer had not been made.

It is conceded that the transfer was made for an antecedent debt and that it was made beyond the ninety (90) day period, and within one (1) year from the date the petition was filed.

Defendant concedes that the debtor was probably insolvent at the time the transfer was made. Nevertheless, an examination of the petition in bankruptcy shows the debtor has assets of $1,675.00, which he claimed as exemptions. He listed a total of $11,815.00 as unsecured debts, of which $10,015.00 were incurred in 1979, and the balance of $1,600.00 were incurred in 1979–80 and $200.00 in 1980. Not listed or included in this is the $7,000.00 loan due the Minars. If that is included, the debtor had debts of $17,015.00 and assets of $1,675.00 as of the date the petition was filed and clearly, was insolvent as of December 11, 1979, the date the deed was recorded.

The first issue to be decided is whether or not the defendants were "insiders" within the intent of § 547.

Defendants contend that since there is no marriage or blood relationship between the defendants and the debtor, the defendants cannot be considered "insiders".

The trustee bases her allegations that the defendants are insiders on the existing relationship between the debtor and Janice Tier, the daughter of the defendants.

Section 101(25) of the Bankruptcy Code, which defines "insider" provides in pertinent part:

Section 101(25) "insider" includes

(A) if the debtor is an individual—

(i) relative of the debtor.

A relative is defined in § 101(34) as follows:

Section 101(34) "relative" means individuals related by affinity or consanguinity within the third degree as determined by the common law—"

Black's Law Dictionary, Fifth Edition, p. 54 includes among its definitions for the word "affinity" the following:

"A close agreement; relation; spiritual relation or attraction held to exist between certain persons".

■ The use of the word "includes" in the definition of an insider is not a limiting term and cannot be so construed as § 102(3) specifically provides that the words "insider" and "including" are not limiting.

Thus, it is clear that by the use of the word "includes", Congress did not intend to limit the classification of insiders to relatives by marriage or consanguinity. The true test of an "insider" is one who has such a relationship with the debtor that their dealing with one another cannot be characterized as an arms-length transaction. 4 *Collier on Bankruptcy,* para. 547.03(2), note 4 on p. 547–17 (15th ed. 1980) states that the word "insider" was intended to include, "among others, relatives of the debtor", and relies upon the following excerpt from the House and Senate Analyses of the Bankruptcy Code, while it was pending before Congress:

"An insider is one who has a sufficiently close relationship with a debtor that his conduct is made subject to close scrutiny other than those dealing at arms length with the debtor." Analysis of HR 8200, H.R.Rep. 595, 95th Cong. 1st Sess., 312 (1977); Analysis of S. 2266, S.Rep. 989, 95th Cong.2d Sess. 25 (1978), U.S.Code Cong. & Admin.News, p. 5787.

In determining whether or not an insider relationship existed here, the Court has considered the following:

■ When the loan was made by the defendants to the debtor, they secured no promissory note and/or mortgage (securing their loan), nor did they request any documentary evidence of the loan or, where and in what manner the loan was to be repaid.

When the debtor conveyed the property to the defendants by the December 11, 1979 deed, he publicly held out the defendants to be relatives by executing the deed, which stated that "this is a conveyance between relatives." He testified that the inclusion of that language in the deed was done by his then attorney, without the debtor's knowledge. This Court rejects that explanation not only on the issue of credibility, but also because it finds it difficult to imagine that an attorney would include such language without the approval of, or at the suggestion of his client.

The debtor and Janice Tier, the daughter of the defendants, have with one child each, of other spouses, jointly occupied a single-family dwelling for the past five (5) years. The debtor refers to Janice Tier as his fiancee, and admits that they have considered marriage in the future.

Janice Tier was familiar with the financial status of the debtor. She knew that he paid some bills on time, and neglected to pay others. She received welfare payments of $225.00 per month and, according to the debtor, turned over the entire welfare payment to him. The act of conveying the Burgess Place property to her parents at a time when he has debts of $17,015.00 and assets of only $1,675.00 is in itself subject to intense scrutiny as the Burgess Place property was the only unencumbered asset he owned. It clearly indicates a desire to treat Janice Tier's parents differently from all other general unsecured creditors.

In *Bulloch v. the United States of America, et al,* 487 F.Supp. 1078 (D.N.J.1980), Judge Ackerman discussed cohabitation by non-married parties and the legal implications of their relationship. He noted the development of New Jersey law that grants non-married partners the right to enforce agreements between themselves. The opinion sets forth the recent developments in the law that recognizes the legal implications of the co-habiting relationship despite the absence of a marriage.

Considering the above, the Court is satisfied that the relationship that existed between Janice Tier and the debtor falls within the meaning of an affinity which is a close agreement between the parties and falls within the definition of a relative as provided in § 101(34) of the Code, and the relationship between the parties, the defendants herein, and the debtor was more than sufficiently close to eliminate any finding of an arms-length transaction, and

that the defendants were "insiders" within the meaning of § 547.

The remaining issue under § 547 is whether or not the creditor had reasonable cause to believe that the debtor was insolvent at the time the transfer was made.

"Reasonable cause" criteria applied under the Code are the same as those under former § 60(b). 4 *Collier on Bankruptcy*, para. 547.30, p. 547–112 (15th Ed. 1980). Thus, each case must be considered in the light of its own facts as the circumstances surrounding each preferential transfer differ from case to case and positive proof of collusion is rarely encountered and, for that reason, the use of circumstantial evidence has been accepted as proper basis for a decision. *In re Llewellyn*, 15 F.Supp. 653, 654 (M.D.Pa.1936); *Dean v. Planters National Bank of Hughes*, 176 F.Supp. 909, 1914 (E.D.Ark.1959).

Neither actual knowledge or actual belief of the debtor's insolvency is required. The accepted test is that where such a state of facts is brought to the creditor's notice, respecting the debtor's financial condition, that an ordinary prudent person would be put on notice and inquiry as to such financial status, then the creditor is charged with the knowledge of such facts as a reasonably diligent inquiry would have disclosed. *Grant v. National Bank*, 97 U.S. 80, 24 L.Ed. 971 (1877); *C. A. Swanson & Sons Poultry Co. v. Wylie*, 237 F.2d 16 (9th Cir. 1956). Where the inquiry would disclose that the debtor has transferred to a creditor all of his unencumbered assets, it is a circumstance which places a duty on the creditor to inquire as to a debtor's insolvency as such a transfer is presumptively questionable and places upon the transferee-creditor the burden of showing he has no notice of the facts and circumstances sufficient to apprise him of the debtor's insolvency. 3 *Collier on Bankruptcy*, para. 60.-54, p. 1082 (14th Ed. 1977).

Here, the debtor told the Minars that because he was unable to pay them the $7,000.00 he owed them, he was transferring the Burgess Place property to them. To this point, the debt was an unsecured debt, no documentary evidence of the debt existed, no repayment schedule or interest charge was agreed upon, and no payments on the debt were made. The sudden offer to transfer the property was such an unusual act that it would put the ordinary prudent person on notice. An inquiry on the part of the Minars would have been unusually simple as their daughter lived in the same house with Montanino for the past five years. By Montanino's own testimony, she knew all of his financial problems. She knew that he had been able in the previous months to pay some bills, while others went unpaid. Any inquiry made through their daughter would have disclosed Montanino's insolvent condition and that the transfer was being made to grant the Minars preferential treatment over all of his other creditors. Montanino's relationship with the Minars' daughter must be considered as the reason for the desire on Montanino's part to prefer the Minars to other creditors. They were certainly aware of the relationship. It may be safely concluded that it was the reason they originally made the $7,000.00 unsecured loan to him.

Under the circumstances, it must be considered that a creditor may not "close his eyes and stop his ears in order to keep himself in ignorance". *In re The Leader*, 26 Am.B.R. 668, 674, 190 F. 624 (W.D.Ark. 1911). Significant also is the failure of the Minars to show they had no notice of facts sufficient to apprise them of Montanino's financial condition. 3 *Collier on Bankruptcy*, Part 2, para. 60.54, p. 1082 (14th Ed. 1977).

Considering the above, the Court finds that the Minars had reasonable cause to believe the debtor was insolvent on December 9, 1979 when he executed the deed to them, and on December 11, 1979 when it was recorded. It is also clear from the above facts that they received more than all of the other creditors of Montanino, if the transfer had not been made.

In Count One of the complaint, the trustee alleges that the transfer in question was a fraudulent transfer pursuant to § 548 of the Bankruptcy Code.

The relevant facts insofar as a reasonable equivalent value is concerned were as follows:

The property was purchased by the debtor for $6,000.00 plus delinquent taxes, in 1978. At that time, the assessed value placed on it by the tax assessor of the City of Passaic, was $9,400.00. Thereafter, at some time between March and June 1979, the tax assessor reappraised the property, and changed it to $6,400.00. The assessed value in Passaic is eighty-five (85%) per cent of the alleged true value of the premises and, in this case, the tax assessor testified that the true value of the home was in the range of $6,400.00 to $7,500.00.

The Court has also considered the attempts by Janice Tier to sell the property and notes that the only offer received was in the amount of $5,000.00.

Section 548(a)(1) deals with fraudulent transfers and gives a trustee the right to avoid a transfer made within one year before the date the petition was filed, if the transfer was made with actual intent to hinder, defraud or delay a creditor at a time when the debtor was insolvent.

It has been established that the debtor was insolvent on the date the transfer was made. While the transfer was for an antecedent debt of $7,000.00, it was for reasonably equivalent value.

The remaining issue under § 548(a)(1) is whether such transfer was made with actual intent to defraud creditors.

While actual intent cannot be found solely on the fact that the transfer in question was between relatives or those who fall into the category of insiders, the relationship of the parties together with all of the circumstances surrounding the transaction "often make the trustee's case compelling notwithstanding the absence of direct evidence of fraud." 4 Collier on Bankruptcy, para. 548.02, p. 548–39.

In McWilliams v. Edmonson, 162 F.2d 454 (5th Cir. 1947), cert. den. 332 U.S. 835, 68 S.Ct. 216, 92 L.Ed. 408, the court set aside a transfer of all of a debtor's assets to his wife's sister as "nepotic and fictitious".

There, the court considered all of the circumstances which, if considered independently, but when taken as a whole lead to the inescapable conclusion that the transfer was the result of a preconceived purpose to defraud creditors. See also Amundson v. Folsom, 219 F. 122 (8th Cir. 1914), cert. den. 238 U.S. 630, 35 S.Ct. 793, 59 L.Ed. 1497 (1915); Sprogell v. Philadelphia Lodge of Perfection 14°, 57 F.Supp. 592 (E.D.Pa. 1943), aff'd 145 F.2d 469 (3rd Cir. 1944).

This Court, having considered the demeanor of the creditors and Janice Tier while testifying, and considering all of the evidence before it, finds that the transfer to the defendants was a preconceived effort to defraud the then existing creditors of this debtor, and falls within the prohibitions of § 548(a)(1).

Submit an order in accordance with the above Opinion.