In re Harold Bruce McIVER, Debtor.

Mark FREUND, Plaintiff,

v.

Claire E. HEATH, Defendant.

Bankruptcy No. 93–07528.
Adv. No. 94–90052.

United States Bankruptcy Court,
N.D. Florida.

Jan. 18, 1995.

Laura Beth Faragasso, Tallahassee, FL, for plaintiff.

Marc E. Taps, Legal Services of North Florida, Tallahassee, FL, for defendant.

Mark Freund, trustee, Tallahassee, FL.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

This matter is before the court on the Plaintiff's motion for summary judgment. The Plaintiff is the Chapter 7 Trustee in the administrative case encompassing this adversary proceeding. The Trustee is seeking to recover an alleged preferential transfer of assets by the Debtor to Claire E. Heath ("Defendant"), the Debtor's live-in girlfriend. For the reasons set forth herein, the motion will be granted.

### FACTS

The facts of this case are not in dispute and are established by the deposition of the Defendant and the affidavits of the trustee. The Defendant met the Debtor in July of 1991 and began seeing him socially in September of 1991. Defendant has been living with the Debtor since April 1, 1992. On July 3, 1992, the Debtor executed and delivered to the Defendant a promissory note in the amount of $5,000.00, evidencing his indebtedness to her at that time. The Debtor then assigned household goods to the Debtor through a writing executed on September 25, 1993. Language appears at the bottom of the writing stating "This assignment of goods is in lieu of $5,000.00 promissory note given by maker to holder on July 3, 1992."

A sense of her relationship with the Debtor can be gleaned from these facts, taken from her deposition:

(1) During the time they were living together, Defendant loaned money to the Debtor and paid some of his personal and business expenses.

(2) Apparently as a joint investment, Defendant used personal funds as a down payment on a purchase of a condominium owned by the Debtor's closely held corporation, Ox-

ford Consulting Group. The Defendant and the Debtor were the corporation's only directors.

(3) The Debtor executed a holographic will in favor of the Defendant in order to insure payment of her indebtedness.

(4) The Defendant allowed the Debtor to use her Citibank Visa and American Express credit cards.

The Debtor then filed his petition for relief on December 29, 1993. The assignment of goods occurred 95 days before the Debtor filed his petition. The trustee asserts that the transfer was an avoidable preference.

### PREFERENCES

A Bankruptcy court may enter summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056(c) (making Fed. R.Civ.P. 56 applicable in Bankruptcy cases). The Supreme Court has held that Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). None of the items listed above have been submitted by the Defendant. Therefore, if the uncontested facts meet the proper legal standard, the Plaintiff's motion for summary judgment should be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986).

Section 547(b) of the Bankruptcy Code gives the trustee the power to avoid preferential transfers of property. The section reads, in pertinent part,

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of filing the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.S. § 547(b) (Law.Co-op.1985 & Supp. I 1994)[1]. Elements (1), (2), (3), and (5) have not been contested. However, the assignment of goods occurred 95 days before the petition in bankruptcy was filed. Thus, the transfer can be avoided only if the Defendant has the legal status of an insider.

## INSIDER STATUS [2]

In the Definitions section, the Code contains a list of individuals that can be considered insiders. Section 101(31) states that "insider" includes—

(A) if the Debtor is an individual—

(i) relative of the debtor or general partner of the debtor;

(ii) partnership in which the Debtor is a general partner;

(iii) general partner of the debtor; or

(iv) corporation of which the debtor is a director, officer, or person in control

11 U.S.C.S. § 101(31). "Relative" is also a defined term in the Code.[3] The Defendant does not fit squarely into any of the enumerated categories. However, the list is preceded by the phrase " 'insider' includes." Under the rules of construction for the Code, the use of the word "includes" was intended not to be limiting. 11 U.S.C.S. § 102(3). Therefore, courts were left to fashion appropriate guidelines for those persons not enumerated in the statute as "insiders."

An early attempt was made by a New Jersey Bankruptcy Court in a case with similar facts to the case at bar. *See Loftis v. Minar (In re Montanino)*, 15 B.R. 307 (Bankr.D.N.J.1981). In *Montanino*, the court focused on the explanation of "insiders" in the legislative history of the Code:

"An insider is one who has a sufficiently close relationship with a debtor that his conduct is made subject to closer scrutiny other than those dealing at arms length with the debtor."

*Id.* at 310 (*citing* S.Rep. No. 95–989, 95th Cong.2d Sess., *reprinted in* 1978 U.S.C.C.A.A.N. 5785, 5810). Presumably with this concept in mind, the court seized upon the word "affinity" found in the Code's definition of "relative." The Court defined the word "affinity" expansively, using a *Black's Law Dictionary* definition: " 'A close agreement; relation; spiritual relation or attraction held to exist between certain persons.' " *Id.* at 309–10. (*citing Black's Law Dictionary* 54 (5th ed. 1979)). By this definition, the court concluded that the Debtor and his fiancee were "related" within the meaning of the Code, and found the parents of his fiancee to be insiders because of the lack of an "arms-length transaction." *Id.* at 310–11.

The opinion does not analyze the "insider" concept well. The extension of the meaning of "affinity" was a misinterpretation of the statute. *In re Winn*, 127 B.R. 697, 699 (Bankr.N.D.Fla.1991) ("Affinity is regarded

---

**1.** For administrative convenience, all further references to the Bankruptcy Code will contain only the title and section number.

**2.** I recognize that the term "insider" is found in several areas of the Code. However, for purposes of this opinion, I will limit discussion of the term to its context within 547(b).

**3.** The Code defines "relative" as an "individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree...." 11 U.S.C.S. § 101(45).

as the connection existing in consequence of marriage between each of the married persons and the kindred of the other"); *See also Rush v. Riddle (In re Standard Stores, Inc.),* 124 B.R. 318, 323 (Bankr.C.D.Cal.1991) (noting "affinity" is qualified by the phrase "within the third degree"). Additionally, the elements of an "arms-length transaction" were never outlined by the *Montanino* court. Apparently, the court was disturbed by the informal nature of both the loans and the relationships between the Defendants and the debtor, but neither factor·is deemed to be more important than the other. *Montanino,* 15 B.R. at 310. Nor does the opinion offer a logical link between the "close relationship" and the "closer scrutiny" suggested in the Committee report.

As the case law developed, courts began to place more emphasis on the legislative history quoted by the *Montanino* court. The standard for determining who was an insider became "the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor so as to render the transaction not arms-length." *E.g., Miller v. Schuman (In re Schuman),* 81 B.R. 583, 586 (9th Cir. BAP 1987); *In re Lemanski,* 56 B.R. 981, 983 (Bankr.W.D.Wis.1986); *See also Rush v. Riddle (In re Standard Stores, Inc.),* 124 B.R. 318, 323 (Bankr.C.D.Cal.1991) (recognizing weakness in standard, and yet adopting it anyway); *Grant v. Podes (In re O'Connell),* 119 B.R. 311, 316 (Bankr.M.D.Fla.1990) (focusing primarily on the lack of "arms-length" dealing). For the reasons stated below, I have concluded that some of the case law has elevated a vague sentence in legislative history to a position it does not deserve.

## "ARMS–LENGTH" ANALYSIS

The legislators, in attempting to define "insiders," stated (in effect) that people other than those dealing at arms length with the debtor should be watched more carefully. *Cf. In re Benson,* 57 B.R. 226, 229 (Bankr. N.D.Ohio 1986) (insider is anyone "whose close relationship with the debtor subjects transactions made between the two parties to careful scrutiny"). This does not mean, however, that the *characteristics* of a transaction

will cause the transferee to be an insider, as some cases have suggested. *See Grant v. Podes (In re O'Connell),* 119 B.R. 311, 316 (Bankr.M.D.Fla.1990) *and Montanino,* 15 B.R. at 310 (lack of specifics regarding when and in what manner the loan was to be repaid considered relevant to determining status as "insider"). Apparently, this is what the court-fashioned "arms-length" test can be taken to mean.

Under 547(b), the specifics of a transfer to an insider are relevant to whether or not the transfer itself is preferential, but irrelevant to whether or not the transferee is an insider. *Cf. Concord Square Apartments of Wood County, Ltd. v. Ottawa Properties, Inc. (In re Concord Square Apartments of Wood County, Ltd.),* 174 B.R. 71, 75 (Bankr. S.D.Ohio 1994) (For purposes of 1129(a)(10), "insider" describes entity holding claim, not claim itself). Determining who is an insider a separate task, requiring the examination of separate statutory sections—§ 101(31) and 101(45). Those are the sections that describe the relationships between the transferor and the transferee. The elements of the transaction, however, are analyzed under the guidelines of § 547. Therefore, there should also be a separate analysis of the elements of the transaction when persons lying outside of the *per se* categories of insiders are involved. To do otherwise would be to employ circular reasoning.

Additionally, some courts using the constrictive "arms-length" test have only examined the creditor's influence or control over the debtor. *E.g., In re Torcise,* 146 B.R. 303 (Bankr.S.D.Fla.1992); *Miller v. Schuman (In re Schuman),* 81 B.R. 583, 586 (9th Cir. BAP 1987); *In re Lemanski,* 56 B.R. 981, 983 (Bankr.W.D.Wis.1986). Such an approach does not adequately address a transfer between two individuals, where issues of "control" become less relevant. *See Browning Interests v. Allison (In re Holloway),* 955 F.2d 1008, 1014 (5th Cir.1992) (transfer between two individuals without a business motive renders element of control nonessential). Finally, 11 U.S.C.S. § 101(31) expressly lists a variety of business entities, relatives, and other individuals. Some courts have found

the "arms-length" test inadequately encompasses them all. In *Rush v. Riddle (In re Standard Stores, Inc.)*, the Court observed that:

"The focus of nearly all the subdivisions of § 101(30) [now 101(31) ] is on those entities that exert or could exert control or influence over the debtor. There are exceptions; e.g., a relative of a director or officer of a corporate debtor is an insider whether or not that relative could exert control or influence over the debtor."

124 B.R. 318, 323 (Bankr.C.D.Cal.1991). I conclude the "arms-length/control or influence" standard is overly restrictive and too susceptible to misinterpretation. When looking outside the statute, "control or influence" can be considered a factor, but not conclusive, in determining the status of certain transferees as insiders.

## THE STANDARD

■ The Bankruptcy Appellate Panel for the Ninth Circuit has offered a different guideline for analyzing this issue. *Friedman v. Sheila Plotsky Brothers, Inc. (In re Friedman)*, 126 B.R. 63 (9th Cir. BAP 1991). Specifically, it found two basic "relational classifications" within the categories of the statute. *Id.* at 69. It concluded, in pertinent part, that

"insider status may be based on a professional or business relationship with the debtor, in addition to the Code's *per se* classifications, where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties."

*Id.* at 70. *Friedman* suggests we look to the relationship between the parties to find evidence of a bond approaching that of affinity. The statutory term "affinity" should be used as a guideline for exploration outside the statute, rather than a tool for broadening the *per se* categories within the statute, as the *Montanino* court did.

However, *Friedman* seems to suggest that only business or professional relationships should be examined. As the case law has revealed, personal relationships can also serve as the basis for "insider" status. *See, e.g., Castellani v. Kohne (In re Kucharek)*, 79 B.R. 393 (Bankr.E.D.Wis.1987) (relationship between man and woman, although platonic, was one of such deep trust that man was deemed an insider); *Wiswall v. Tanner (In re Tanner)*, 145 B.R. 672 (Bankr.W.D.Wash. 1992) (Court analyzed both the "business relationship" and "personal relationship" between Debtor and former lesbian lover). A business, professional, or personal relationship, that compels the conclusion that the transferee could be able to gain an advantage such as that attributable simply to affinity, would result in the transferee being classified as an insider.

■ Applying this standard, the defendant in the case at bar should be classified as an insider. The Defendant's statements about the Debtor reveal both a personal and a financial relationship, quite similar to a marital relationship. Defendant trusted the Debtor enough to loan him money for his business operations *and* his personal expenses. She trusted him enough to finance his corporation's investment in a condominium, and the Debtor trusted her enough to name her a director of the corporation. She allowed him the use of her credit cards, resulting in the financing of several of the Debtor's purchases by the Defendant. The Debtor has demonstrated his care of the Defendant by executing a holographic will in order to insure that she be repaid. Finally, they both have trusted each other and cared enough about each other to live with one another for over two years. Their relationship was a union of both their business and personal interests, based on mutual care and trust.

I agree with the courts who have stated "that not every creditor-debtor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship." *Friedman*, 126 B.R. at 70 (citing cases). Despite this fact, I am compelled to conclude, from the Defendants own statements and the other submitted evidence, that the relationship between the Debtor and Defendant would cause the Defendant to be able to gain an advantage similar to one arising from affinity. I there-

fore consider her an "insider" within the meaning of 11 U.S.C.S. § 101(31). The other elements of § 547(b) have not been contested. Therefore, the trustee should be allowed to avoid the assignment of furniture to the Defendant.

## CONCLUSION

For the reasons stated herein, the motion of the Chapter 7 Trustee is GRANTED. A separate final judgment will be entered in accordance herewith.

DONE AND ORDERED.