**In re Harold LEVY, Debtor.**

**Irving E. GENNET, Trustee in Bankruptcy for Harold Levy, Plaintiff,**

v.

**Sally DOCKTOR, Defendant.**

**Sally DOCKTOR, Third Party Plaintiff,**

v.

**Harold LEVY, Third Party Defendant.**

**Bankruptcy No. 89–35763–BKC–SHF. Adv. No. 93–1427–BKC–SHF–A.**

United States Bankruptcy Court, S.D. Florida.

July 18, 1995.

Michael Bakst, West Palm Beach, FL, for Irving E. Gennet, Trustee.

Sally Docktor, Highland Beach, FL, pro se.

Harold Levy, Highland Beach, FL, pro se.

### MEMORANDUM DECISION

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS MATTER came before the Court on December 12, 1994 and January 9, 1995 for trial. Plaintiff, Irving E. Gennet, the bankruptcy trustee for Harold Levy, the debtor ("Plaintiff") in the referenced bankruptcy proceeding, commenced this adversary proceeding on December 17, 1993. The Defendant Sally Docktor ("Defendant") answered, and also filed a Third Party Complaint against Debtor Harold Levy ("Debtor"). The Plaintiff subsequently filed an amended complaint, wherein he seeks to avoid a fraudulent transfer and/or preferential transfer, to avoid a post-petition transfer, and to recover damages for the Defendant's violation of the automatic stay. After several months of pretrial posturing, this cause was tried upon the Plaintiff's amended complaint and upon Count I of the Defendant's Third Party Com-

plaint, whereby she seeks indemnification against the Debtor.[1] During the course of trial, summary judgment was granted in favor of Defendant against Plaintiff as to Count III of the Amended Complaint, wherein Plaintiff sought to avoid a post-petition transfer of the Debtor's interest in certain real property located at 2602 North Federal Highway, Boynton Beach, Florida.[2] The Court, having carefully considered the testimony and documentary evidence presented, together with the candor and demeanor of the witnesses, grants judgment in favor of the Defendant on Counts I and IV of the Amended Complaint, grants judgment in favor of the Plaintiff on Count II, and grants judgment in favor of Debtor/Third Party Defendant Harold Levy against Defendant/Third Party Plaintiff Sally Docktor as to Count I of the Third Party Complaint.

The Defendant and the Debtor have known each other for approximately 17 years. Although the Debtor and the Defendant never married, they have shared a residence since at least 1985. In June, 1985, the Debtor and the Defendant acquired title to the condominium unit located at 1102 Highland Beach Drive, Unit 2–W, of the Bel Highland Condominium IV. Although several of the exhibits relating to ownership of the subject condominium unit refer to the Debtor and the Defendant as husband and wife, both readily concede that they have never been married to each other. Thus, when they acquired title to the subject property on June 19, 1985, by way of warranty deed conveyed by one Alfred J. Squitiri (Ex. 19, pg. 2), they did so as tenants in common. 12 Fla.Jur.2d Co-tenancy and Partition § 2. In absence of evidence to the contrary, co-tenants are presumed to owe equal undivided interests. Thus, with their purchase of the residence, the Debtor and the Defendant each owned an undivided one-half interest.

The Debtor and the Defendant acquired the condominium unit in June 1995 with a down payment of $12,500.00, together with an additional cash payment at closing of $31,-102.58 (Ex. P–26). Initially, it was the intention of the Debtor and the Defendant to equally contribute the cash funds necessary to acquire the unit. However, the Debtor was unable to contribute an amount equal to one-half of the balance due at closing,[3] and accordingly, Defendant shouldered the entire financial burden of acquiring the condominium. Nonetheless, title to the condominium unit was acquired jointly by Debtor and Defendant, with the Debtor promising to reimburse the Defendant for his one-half share of the property acquisition outlay. In addition to the $43,602.58 in cash paid to the seller, the Debtor and the Defendant jointly executed a purchase money mortgage securing a six-month promissory note in the amount of $234,500.00, to acquire the property. This note became due in mid–1986. However, by then the Debtor was in no better position to provide the Defendant with financial assistance than he was when the property was acquired by Debtor and Defendant six months earlier. Thus, Debtor and Defendant refinanced the property with a mortgage and loan granted by Great Western Savings (Ex. P–27). Thereafter, the Defendant, upon realization that the Debtor would be unable to pay her the sum of approximately $15,000.00, representing one-half of the cash required to initially purchase the condominium, insisted upon some form of compensation from the Debtor. As such, in May 1986, the Debtor allegedly executed a Quit Claim Deed in favor of Defendant, conveying his undivided one-half interest in Unit 2–W of Bel Highland Condominium IV to Defendant (Ex. P–20). Had this quitclaim deed been recorded contemporaneously with its purported execution date of May 23, 1986, it is unlikely that the Plaintiff would be at-

1. Count I of the Third Party Complaint, whereby the Defendant sought damages for Abuse of Process against the Plaintiff, his counsel, and his counsel's law firm, was dismissed, by Order of this Court dated June 22, 1994 (CP 90).

2. The debtor's interest in the real property located at 2602 North Federal Highway, Boynton Beach, Florida was purchased by one John

McCrocklin, the debtor's mortgagor on said property, pursuant to an order of the Court dated October 31, 1994, thereby rendering Count III moot.

3. There was no evidence adduced at trial that the Debtor made *any* contribution toward payment of the closing proceeds for the subject property.

tempting to avoid this conveyance. However, the Deed was not recorded in the Public Records for Palm Beach County, Florida until January 26, 1989, and within one year of the Debtor's November 3, 1989 bankruptcy filing.

The Plaintiff contends that the transfer of the Debtor's undivided one-half interest in the condominium unit to the Defendant did not become effective until January 26, 1989, the date upon which the quitclaim deed from the Debtor to the Defendant was recorded, thereby rendering the transfer avoidable under 11 U.S.C. § 548(a)(2). This provision of the Bankruptcy Code enables a trustee to avoid any transfer made within one year of the petition date, if the Debtor received less than a reasonable equivalent value in exchange for such transfer, and was insolvent on the date of the transfer. The Plaintiff also contends that the transfer of the Debtor's undivided one-half interest in the condominium unit on January 26, 1989 is avoidable under 11 U.S.C. § 547(b) as a preferential transfer to an insider.

Defendant denies the material allegations of the amended complaint, and affirmatively asserts that the transfer of the Debtor's undivided one-half interest in the subject condominium unit was made without an intent to hinder, delay, or defraud the creditors of Harold Levy. She contends that the transfer occurred in May 1986 as reflected on the quitclaim deed executed by the Debtor in favor of the Defendant. Defendant further asserts that the Debtor's undivided one-half interest in the condominium unit could not have been the subject of a fraudulent transfer under any set of circumstances, since the property constituted the Debtor's homestead prior to his conveyance of his interest to the Defendant. In addition, Defendant filed a third-party complaint against the Debtor[4] for indemnification as to any sum for which Defendant is found to be liable to the Plaintiff. The third-party complaint was tried contemporaneously with the Plaintiff's complaint.

The Court, having carefully considered the testimony adduced at trial, together with all exhibits introduced at trial, and having observed and considered the candor and demeanor of the witnesses, finds that the Debtor's transfer of his undivided one-half interest to the condominium unit located at 1102 Highland Beach Drive, Unit 2–W of the Bel Island Condominium IV is not fraudulent under 11 U.S.C. § 548(a)(2). However, the Court finds that the transfer is avoidable under 11 U.S.C. § 547(b) as a preferential transfer. Lastly, the Court finds that the Defendant/Third–Party Plaintiff Sally Docktor is not entitled to judgment against Debtor/Third–Party Defendant Harold Levy.

Central to the defenses asserted by the Defendant is the contention that the transfer of the subject property was effected on May 23, 1986, the date upon which the quitclaim deed from the Debtor to the Defendant appears to have been recorded. It is clear that, for purposes of determining the time of an alleged fraudulent or preferential transfer, state law governs the time of perfection of such a transfer. *In re Emerald Oil Co.*, 807 F.2d 1234 (5th Cir.1987). Under Florida law, by virtue of the recording act, Florida Statutes § 695.01, an unrecorded deed is not valid and effective as against a subsequent bona fide purchaser until and unless the deed is recorded. Further, section 548(d)(1) of the Bankruptcy Code provides that:

> ... a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest of such property of the transferee ...

Thus, the Debtor's transfer of his undivided one-half interest in the condominium to the Defendant occurred on January 26, 1989, the date upon which the deed was recorded.

The Plaintiff contends that the transfer by the Debtor to the Defendant was a fraudulent transfer. To prevail on this

---

**4.** Defendant named Irving E. Gennet, trustee for Harold Levy, Daniel Bakst, counsel for the trustee, and Mr. Bakst's law firm, Ackerman, Bakst & Cloyd, P.A. as additional third-party defendants to her third-party complaint. The complaint was dismissed as to Mr. Gennet, Mr. Bakst and Ackerman, Bakst & Cloyd, P.A.

count, the Plaintiff is required to prove that the transfer was made for less than a reasonable equivalent value. The unrebutted testimony of both the Defendant and the Debtor is that, when they acquired the condominium unit in June 1985, each was to contribute one-half of the purchase price for the unit. However, the Debtor was unable to pay his share of the purchase price at closing, and as a result, the Defendant was required to provide all cash required to close the transaction, amounting to $50,376.38 (Ex. P–26). Since Defendant and Debtor each owned an undivided one-half interest, the Debtor's share of the cash to close the transaction, which was paid by the Defendant, equals $25,188.19 (Ex. D–2).

The purchase by the Defendant and Debtor was financed in part by a six-month purchase money mortgage and note granted by the seller. At the end of that time period, it became necessary for the Defendant and the Debtor to refinance the loan. A payoff of the seller's mortgage was negotiated for $150,000.00, and a new mortgage was placed on the property in favor of Great Western Savings Bank in the principal amount of $155,000.00 (Ex. P–27). Since neither Defendant nor Debtor was required to advance any funds to close this loan transaction, the pre-existing obligation owed by the Debtor to the Defendant relating to the purchase of the condominium unit remained intact. The Debtor, realizing that he would be unable to re-pay Defendant, executed the quit claim deed in May 1986 (Ex. P–20), thereby purportedly satisfying his then existing obligation to the Defendant.

As of November 1988, Debtor owed Defendant at least $50,000.00, consisting of $20,000.00 loaned by Defendant to Debtor for the purchase of an automobile, and an additional $30,000.00 loaned by Defendant for general living expenses. In addition, Debtor owed Defendant at least $25,188.19 representing the Debtor's share of the cash paid by Defendant to close on the purchase of the subject condominium unit. Thus, Debtor owed Defendant at least $75,188.19 as of January 26, 1989, the effective date of the property transfer. The value of Debtor's interest in the condominium unit as of January 26, 1989 was approximately $63,750.00 (the $282,500.00 purchase price for the condominium, representing the presumed value of the unit, *less* the $155,000.00 mortgage encumbering the unit, and divided in half). Thus, the equity in the property transferred to Defendant ($63,750.00) is roughly equivalent to the debt then due to Defendant ($75,188.19).

The existence of pre-existing debt precludes the finding that a transfer is fraudulent under § 548 of the Bankruptcy Code, provided that the value of the consideration represents a fair and adequate consideration. *In re Abraham*, 33 B.R. 963 (Bankr.M.D.Fla. 1983). Furthermore, the consideration for such a transfer does not necessarily need to be present consideration in order to be fair consideration within the scope of the Bankruptcy Code. *Id.* at page 968. Thus, the Debtor's transfer of his undivided one-half interest in Unit 2–W of the Bel Island Condominium IV, which interest was worth roughly $63,750.00, in payment of his obligation due the Defendant of approximately $75,000.00, was for a reasonably equivalent value, thereby defeating Plaintiff's contention that the conveyance should be avoided as a fraudulent transfer.

Plaintiff also contends that the aforedescribed transaction whereby the Debtor's undivided one-half interest in the subject condominium unit was transferred to the Defendant constitutes a preferential transfer, avoidable under 11 U.S.C. § 547(b). To avoid the transfer as preferential in the instant controversy, the Plaintiff must establish that the transfer was:

(1) To or for the benefit of a creditor;

(2) For or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) Made while the debtor was insolvent;

(4) Made between ninety days and one year before the date of the filing of the petition, if such creditor receiving the transfer was an insider; and

(5) That enables such creditor to receive more than such creditor would receive if the case were a case under chapter 7, and the transfer had not been made.

11 U.S.C. § 547. As noted above, the transfer, which was effective on January 26, 1989, was for the benefit of a creditor (the Defendant), and was in payment of an antecedent debt ($75,188.19).

In order for Plaintiff to establish the third element necessary under 11 U.S.C. § 547(b), Plaintiff must prove that the Debtor was insolvent on the date that the transfer occurred. Thus, Plaintiff would need to establish that the Debtor was insolvent as of January 26, 1989. The trial record amply establishes the insolvency of the Debtor as of January 26, 1989. As of that date, the Debtor owed liquidated, non-contingent unsecured debts of at least $327,381.11, consisting of a $50,000.00 obligation due to Defendant, as acknowledged by the Debtor at trial, and a $277,381.11 obligation due to the Federal Deposit Insurance Corporation ("FDIC") as receiver for Sparta Sanders State Bank, which judgment was entered on February 6, 1989 (Ex. P–3). Although the Debtor lists the obligation due to the FDIC as disputed, the existence and validity of this obligation was established with the entry of the judgment on February 6, 1989. In absence of evidence to the contrary, the Court can reasonably infer that this indebtedness existed as of January 26, 1989, eleven days prior to the entry of the judgment.

In contrast, the Debtor's assets as of January 26, 1989 consisted of (1) his interest in real property located at 2602 North Federal Highway, Boynton Beach, Florida which property was over-encumbered; (2) his undivided one-half interest in the subject condominium unit, the value of which could not have exceeded $70,000.00 as of the transfer date;[5] and the personal property of the Debtor, valued at $710.00 on his schedules.[6] Thus, with assets worth approximately $70,700.00, and liabilities exceeding $327,000.00, the Debtor was insolvent as of January 26, 1989, and as such, the Plaintiff has established the third element required to avoid a transfer under 11 U.S.C. § 547(b).

The fourth element under § 547 requires a plaintiff to prove that the transfer, if it occurred between 90 days and one year before the petition date, was made to an insider. The Bankruptcy Code states that an insider "includes" a relative of the debtor. 11 U.S.C. § 101(31)(A)(i). This Court acknowledges that a restrictive reading of this definition might exclude the Debtor as an insider. However, numerous courts have interpreted this provision liberally to include individuals having a close or special relationship with a debtor. *In re McIver,* 177 B.R. 366 (Bankr.N.D.Fla.1995); *In re O'Connell,* 119 B.R. 311 (Bankr.M.D.Fla.1990); *In re Kucharek,* 79 B.R. 393 (Bankr.E.D.Wis.1987); *In re Hollar,* 100 B.R. 892 (Bankr.N.D.Ohio 1989); *In re Tanner,* 145 B.R. 672 (Bankr. W.D.Wash.1992). As stated in *McIver, id.:*

> A business, professional, or personal relationship, that compels the conclusion that the transferee could be able to gain an advantage such as that attributable to affinity, would result in the transferee being classified as an insider.

---

5. The Debtor and Defendant acquired the subject condominium unit in June 1985 for $282,500.00 (Ex. P–26). They refinanced the unit in September 1986, obtaining a mortgage loan from Great Western Savings for $155,000 (Ex. P–21). During the course of the subsequent two and one-half years to the date of transfer to Defendant, it is inconceivable that the principal balance due to Great Western on its mortgage could have been reduced from $155,000 to less than $140,000.00, assuming that the Debtor and/or the Defendant made regular monthly mortgage payments. Thus, assuming the condominium unit retained its purchase price value of approximately $282,000.00, the equity in the condominium unit could not have been greater than a $140,000.00 as of January 26, 1989, and thus, the value of the Debtor's undivided one-half interest in the unit would not have exceeded $70,000.00.

6. The Court believes that it is reasonable to assume that the value of the Debtor's personal property as of January 26, 1989 was no greater than the $710.00 in personal property based upon the Debtor's bankruptcy schedules. If the Debtor had owned substantial personal property as of the January 26, 1989 transfer date which was *not* owned by him as of the November 3, 1989 petition date, then the Debtor would have accounted for the disposition of such personal property in question 12 to his Statement of Financial Affairs (Ex. P–1). However, pursuant to the Debtor's Statement of Financial Affairs there were no transfers of property within the one year prior to the petition date.

The relationship between Defendant and the Debtor spans in excess of sixteen years. Defendant advanced one-half of the purchase price for the condominium on behalf of the Debtor, since he was unable to fund his one-half of the purchase price. The Defendant and the Debtor shared living expenses during their relationship, and Defendant had loaned or given the Debtor various sums during the course of their relationship. Eventually, the Debtor executed a $50,000.00 note in Defendant's favor in January, 1988 to memorialize the various loans made by Defendant to the Debtor. Indeed, during her March 3, 1994 deposition (Ex. D–8; CP 188 in Case No. 89–35763), the Defendant provides the following explanation as to why the deed was not recorded until January 26, 1989:

> Only because it was time to do it. That's all. I didn't have any time schedule as to when it could be done, but when time had lapsed, I decided that it was time to get it done. Again, this was not a thing between two strangers. This was a thing between people who were emotionally involved.

When one further considers that the Debtor had no income for 1990 and was unemployed as of the petition date, it is obvious that he relied substantially upon Defendant for financial support and sustenance. Quite clearly, the Debtor and Defendant were not dealing "at arms length", but rather, that the transaction at issue emanated from the special relationship existing between Debtor and Defendant. This Court therefore concludes that Defendant was an insider of the Debtor on January 26, 1989, the date upon which the Debtor's transfer to Defendant became effective. Finally, because the Defendant was not a secured creditor as of the effective date of the transfer, she received more than she otherwise would receive from the distribution of estate assets than if the transfer had not occurred. Thus, Plaintiff has established all elements of a preferential transfer as to the Debtor's interest in the condominium unit located at 1102 Highland Beach Drive, Unit 2–W, of the Bel Highland Condominium IV.

The Defendant asserts various affirmative defenses to the Plaintiff's contention that the transaction constitutes a preferential transfer, under the headings of fraud, estoppel, laches, and statute of limitations. Many of the stated affirmative defenses are duplicative, and the affirmative defenses essentially state two bases upon which the Plaintiff's preferential transfer claim arguably should be defeated:

(1) Statute of Limitations (due to the lapse of time since the transaction in dispute, the Plaintiff should be precluded from instituting and maintaining the instant cause of action);

(2) Homestead (prior to the transfer of the Debtor's interest in the condominium, the property constituted the Debtor's homestead and was owned jointly by him and Defendant thereby exempting the Debtor's interest from execution, on the basis that there could be no fraudulent or preferential transfer of homestead property).

The Defendant contends that under 11 U.S.C. § 546(a)(1), the Plaintiff was required to file the instant adversary proceeding no later than November 6, 1991, two years after the date of his appointment. Since the adversary proceeding was not filed until December 20, 1993, the Defendant contends that the referenced statute of limitations applies. Plaintiff counters by invoking the equitable tolling doctrine, as initially articulated in *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875). The Plaintiff asserts that the tolling of the statute of limitations is warranted since the Debtor concealed his transfer of the undivided one-half interest in the condominium unit. Defendant counters that she had no control over the Debtor's actions in preparing his bankruptcy schedules, but that under any set of circumstances, the equitable tolling doctrine should not apply since, as far as the Defendant was concerned, the property transfer occurred on May 23, 1986, the date upon which the deed was allegedly executed by the Debtor in favor of Defendant. This Court already has explained its reasoning in determining that the transfer occurred on January 26, 1989. The Court further determines the equitable tolling doctrine applies *sub judice*.

As enunciated in *Bailey v. Glover*:

[W]hen there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him.

*Id.* at pgs. 349–350. Numerous courts have addressed the equitable tolling doctrine, and have distinguished between the act of concealing an asset, and an inadvertent failure to list an asset. *See, Suslick v. Rothschild Securities Corp.,* 741 F.2d 1000 (7th Cir.1984); *In re White v. Boston,* 104 B.R. 951 (S.D.Ind. 1989). In instances where the act of concealing an asset by the debtor is negligent "... the bar of limitations should not begin to run until a plaintiff obtains knowledge or through due diligence should have obtained knowledge of the underlying fraud." *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1296 (7th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976).

█ At the trial of the instant adversary proceeding, Plaintiff testified that he was unaware of the property interest formerly owned by the Debtor and subsequently transferred to Defendant until March 30, 1993, when he was contacted by a creditor. Plaintiff thereafter conducted a Bankruptcy Rule 2004 Examination of the Debtor and inquired as to the nature and extent of the property interest conveyed to the Defendant, leading to the institution of the instant adversary proceeding. The Defendant counters that, had the Plaintiff diligently performed his duties and conducted a routine property search, he would have determined that the Debtor had owned an interest in the Highland Beach Condominium unit prior to the petition date, and thus could have taken action on a timely basis. The Court rejects the notion that the Plaintiff should have conducted a property search. Plaintiff had no knowledge of the Debtor's interest in the condominium at the commencement of this case, as no interest was listed on the Debtor's schedules. As previously noted, the Debtor failed to reflect, in his answer to Question 12 of his Statement of Financial Affairs, that he had made a transfer of his interest in the condominium unit within one year prior to his bankruptcy filing. It is wholly unrealistic to expect a bankruptcy trustee, in the ordinary course of the performance of his duties, to conduct a title search. It has only been with the recent amendment to the Bankruptcy Code and related statutes that the minimum per case compensation paid to a trustee has increased from $45.00 to $60.00. Performance of a real property search in every case, as suggested by the Defendant, would render service as a chapter 7 panel trustee economically implausible. Rather, a bankruptcy trustee has a right to rely upon the sworn schedules and statements filed by a debtor at the commencement of a bankruptcy case, and such reliance should not preclude a trustee from seeking recovery of a possible asset, the existence of which is not revealed until the expiration of the two-year limitations period under 11 U.S.C. § 546. Thus, the Plaintiff's reliance upon the Debtor's schedules was reasonable, and the instant action is not timed barred.

█ The Court likewise rejects the Defendant's contention that, since the property conveyed arguably was the Debtor's homestead property, the transfer of his property interest cannot be avoided. This Court agrees that under Florida law, a homestead cannot be fraudulently transferred. *See, Sneed v. Davis,* 135 Fla. 271, 184 So. 865 (1938).[7] As stated above, the Court finds there was no fraudulent transfer. Rather, the transfer of the property is subject to avoidance because there was a preferential transfer to the Defendant. The Court differentiates between a fraudulent transfer and a preferential transfer by viewing the recipient of the transfer. With a fraudulent transfer, *contra* to a preferential transfer, no creditor is preferred over another. With the transfer of an interest in one's homestead to a credi-

---

7. To the extent this opinion differs from the Court's Order Granting Defendant's Second Joint Motion for Reconsideration of Order Dated June 22, 1994 Denying Joint Movants [sic] Motion for Summary Judgment, entered in this case on July 22, 1994, the Court recedes from the portion of that order relating to the entitlement to exemption.

tor, the debtor conveys that property, and any interest therein, to a specific creditor. The debtor retains no interest, either legal or equitable, in the property. Thus, the debtor abandons the claim to homestead.

As a general rule, a homestead right is extinguished by a conveyance of the premises by the homestead claimant. *Semple v. Semple,* 82 Fla. 138, 89 So. 638 (1921); *Gulf Refining Co. v. Ankeny,* 102 Fla. 151, 135 So. 521 (1931). The Debtor, with his conveyance of his undivided one-half interest to Defendant, a creditor, had no further intent to hold any interest, either legal or equitable, in the property. He cannot now resurrect a homestead claim of exemption after such a transfer is set aside. The Court thus rejects the Debtor's homestead exemption claim.

The Defendant, in her third-party complaint against the Debtor, contends that he breached his contractual duty due Defendant "in the creation of the mortgage payable to Plaintiff as mortgagee and for damages due as a result of the failure to convey the real estate in question under the quit claim deed ...". (CP 25–¶ 6). Defendant has failed to establish either that a contractual relationship existed between her and the Debtor, or that the Debtor's act of conveying title to the subject condominium unit to the Defendant damaged her. The only "damage" suffered by the Defendant will be this Court's determination that said conveyance is avoidable by Plaintiff. In addition, the Defendant has wholly failed to establish the measure of any damages to which she otherwise would be entitled against the Debtor.

A separate judgment shall be entered in accordance with Rule 7054 of the Federal Rules of Bankruptcy Procedure determining the Debtor's transfer of his interest in the Highland Beach Condominium Unit to be avoidable as a preferential transfer, but not avoidable as a fraudulent transfer.

ORDERED.